UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| JAMES WOOD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 1:20-CV-54-TAV-CHS |
| D. SETTLES,<br>B. COBBLE,<br>J. HIGDON, and<br>BOB GARRET, | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This is a pro se prisoner's complaint for violation of 42 U.S.C. § 1983 in which Plaintiff alleges that his current placement in solitary confinement is negatively affecting his mental health and causing him to have suicidal urges [Doc. 2 p. 3–4]. According to Plaintiff, Defendants, who are jail officials, are aware that the conditions of Plaintiff's current confinement have negatively affected his mental health and therefore provide him with a weekly therapy session, but this is insufficient to treat Plaintiff's daily suicidal urges [*Id.* at 4–6]. However, Plaintiff does not want to tell Defendants about the frequency of these urges because when he has done so in the past, they have "essentially punished him" by changing the conditions of his confinement in a manner that deters Plaintiff from seeking help for this issue [*Id.* at 4–6]. Now before the Court are Plaintiff's motion to seal the case [Doc. 4], complaint [Doc. 2] for screening pursuant to the Prison Litigation Reform

Act ("PLRA"), and motion for preliminary injunction and/or temporary restraining order [Doc. 5]. The Court will address these filings in turn.

## I. MOTION TO SEAL

Plaintiff seeks to seal this case "due to the sensitive and private nature of this suit" [Doc. 4]. This Court's local rule provides that "[e]xcept as otherwise provided by statute, rule, or order, all pleadings and other papers of any nature filed with the Court ("Court records") shall become a part of the public record of this Court." E.D. Tenn. LR 26.2(a). Moreover, Courts in this District will not seal records in a case unless the movant establishes "good cause." *Id*. at 26.2(b).

The Court has implemented these Rules because courts as a whole have long recognized a "strong presumption in favor of" open court records due to the public's constitutional and common law right of access to civil proceedings and judicial records. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). A party seeking to seal court records has the burden to overcome this presumption. *Shane Grp.*, 825 F.3d at 305. Some circumstances that may justify sealing court records include: 1) a defendant's right to a fair trial, 2) trade secrets, 3) national security, and 4) certain privacy rights of participants and third parties. *Brown & Williamson*, 710 F.2d at 1179 (citations omitted). However, "neither harm to reputation of the producing party nor conclusory allegations of injury are sufficient to overcome the presumption in favor of public access." *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009)

(citing *Brown & Williamson*, 710 F.2d at 1179–80).  Rather, "[o]nly the most compelling reasons can justify nondisclosure of judicial records."  *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983).

Accordingly, in determining whether to grant a motion to seal court records, "a court must balance the litigants' privacy interests against the public's right of access, recognizing our judicial system's strong presumption in favor of openness."  *Rudd Equip. Co. v. John Deere Construction & Forestry Co.,* 834 F.3d 589, 593 (6th Cir. 2016).

The Court finds that Plaintiff has not met his burden to establish that his privacy interests outweigh the public interest in this matter and the strong presumption in favor of open court records.  As set forth above, Plaintiff seeks to seal this entire case based solely on "the sensitive and private nature of this suit" [Doc. 4].  While the Court recognizes the sensitive nature of the information in Plaintiff's complaint regarding his ongoing mental health issues, liberally construing the complaint in his favor, Plaintiff alleges that jail officials in the Tennessee Department of Correction ("TDOC") have repeatedly placed him and other prisoners in unnecessarily harsh conditions of confinement after they reported suicidal urges in a manner that may deter them from reporting such thoughts.  This is an issue in which the public, including other Tennessee prisoners subjected to similar conditions, would have substantial interest.  Moreover, Plaintiff has not "'articulate[d] specific facts showing clearly defined and serious injury'" would result if the Court did not seal the filings in this case.  *See In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D.

544, 549 (E.D. Tenn. 2013) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)) (internal quotation marks omitted).

For these reasons, the Court cannot justify sealing this entire case due only to the private nature of Plaintiff's mental health issues underlying his claims, and Plaintiff's motion to seal [Doc. 4] will be **DENIED**.

## II. SCREENING

### A. Standard

Under the PLRA, district courts must screen prisoner complaints and dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. § 1915(e)(2)(B); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir.1997). The dismissal standard the Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). As such, formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief. *Id.* at 681. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983.

## B. Complaint Allegations

Plaintiff alleges that he has been in solitary confinement since January 3, 2020, and that this placement is "exacerbating his mental health issues" and causing him to have a "much increased urge to kill himself" on a daily basis [Doc. 2 p. 4–5]. While jail officials are aware that Plaintiff's current solitary confinement has negatively affected his mental health and caused him to contemplate suicide in "certain moments" and therefore provide him a weekly therapy session, Plaintiff has not told them that he has such thoughts daily [*Id.* at 5]. Plaintiff does not want to tell jail officials about the frequency of his suicidal urges because when he has done so in the past, they have "essentially punished him" by placing him in a cold, empty cell with no mattress or blanket and only a "scanty suicide vest" to wear, forced him to sleep on the concrete floor of the cell, kept the lights on in the cell for twenty-four hours a day, and denied him the ability to shower, wash his hands, and brush his teeth [*Id.* at 5–6]. Jail officials subjected Plaintiff to these conditions from January 3 through January 6, 2020, January 8 through January 14, 2020, and January 22 through January 23, 2020 [*Id.* at 6].

Plaintiff has sued Defendants in their official capacities only and seeks a (1) declaration that Defendants have violated his Eighth Amendment rights; (2) an injunction requiring Defendants to (a) properly treat his mental health issues and (b) change the

5

precautionary measures taken for suicide prevention; and (3) reimbursement for the costs of this lawsuit [*Id.* at 7].

### C. Analysis

First, as Defendants are all officials in a TDOC facility whom Plaintiff has sued only in their official capacities, his claims are actually against the State of Tennessee. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that claims against officials in their official capacity are effectively claims against the entity that employs them). Thus, the Clerk will be **DIRECTED** to substitute the State of Tennessee as the only Defendant in this matter.

Notably, the Eleventh Amendment generally bars suits brought against states. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984). Thus, "absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011). The State of Tennessee has not waived its Eleventh Amendment Immunity, s*ee Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986), and Congress has not abrogated Tennessee's Eleventh Amendment immunity. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). However, Plaintiff's claims fit within the limited exception to Eleventh Amendment immunity announced in *Ex Parte Young*, 209 U.S. 123 (1908) which "allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations," but "does not extend to retroactive relief or claims for money damages." *Boler*, 865 F.3d at 412.

Accordingly, Plaintiff's requests for declaratory and/or monetary relief will not proceed. As such, Court must now evaluate whether Plaintiff's remaining claims for injunctive relief arising out of his allegations that (1) he is not receiving proper treatment for his current mental health issues and (2) jail officials have implemented harsher than necessary conditions of confinement when Plaintiff has report suicidal urges adequately state a claim upon which relief may be granted under § 1983 against Defendant State of Tennessee. Notably, Defendant State of Tennessee may only be liable for these claims if its custom or policy caused a violation of Plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that a governmental entity may be liable under § 1983 only where its official custom or policy causes a constitutional rights violation).

### D. Mental Health Care

First, Plaintiff's complaint does not allow the Court to plausibly infer that jail officials are being deliberately indifferent to his serious mental health needs pursuant to a custom or policy of Defendant State of Tennessee. A prison authority's deliberate indifference to a prisoner's serious medical need violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Prison officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* at 104–5. Establishing a deprivation of a federal right in this context requires evidence that that the acts or omissions of the jail official were "sufficiently harmful to evidence deliberate indifference to serious medical

needs." *Id.* at 106. Deliberate indifference is equivalent to "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor may not be liable under § 1983 unless the he (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847.

Plaintiff's complaint does not allow the Court to plausibly infer that any jail official is disregarding any known risk to Plaintiff arising from his mental health issues. To the contrary, Plaintiff asserts that jail officials are providing him a weekly therapy session because they are aware that solitary confinement is negatively affecting Plaintiff's mental health. While Plaintiff claims that this weekly therapy session is inadequate to address his daily urges to kill himself, he specifically states that jail officials are not aware of the frequency of these urges. Jail officials cannot be liable under § 1983 for not treating issues of which they are unaware. *Id.* Thus, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983 based on allegations that Plaintiff is not receiving adequate mental health care.

### E. Suicide Prevention Measures

As set forth above, however, Plaintiff also asserts that he has kept his daily suicidal urges from jail officials because when he has told them about his past suicidal thoughts, they have placed him in a cold, empty cell with no mattress or blanket and only a "scanty suicide vest" for clothing, forced him to sleep on the concrete floor of this cell, kept the

8

lights on in the cell for twenty-four hours a day, and denied him the ability to shower, wash his hands, and brush his teeth.

1. **Eighth Amendment**

First, nothing in the complaint allows the Court to plausibly infer that jail officials' implementation of these measures upon becoming aware of Plaintiff's suicidal urges amounts to a violation of the Eighth Amendment. "[T]the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Accordingly, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Thus, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" will establish that a prisoner's conditions of confinement violate the Eighth Amendment. *Id.* at 8–9 (1992) (citations and quotations omitted).

Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Accordingly, in examining claims alleging that the conditions of the plaintiff's confinement violate the Eighth Amendment, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.

In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36; *see also Rhodes*, 452 U.S. at 34.

First, Plaintiff's allegations that the cell was "extremely cold" and that he was only provided a "scanty suicide vest" for clothing are conclusory, as Plaintiff has not included any facts from which the Court can plausibly infer that the temperature of the cell and/or clothing restriction amount to an extreme deprivation that caused a grave risk to Plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (providing that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" fail to state a claim upon which relief may be granted).

Likewise, nothing in the complaint allows the Court to plausibly infer that jail officials' acts of taking Plaintiff's normal clothing, providing him with a suicide vest, and requiring the lights in his cell to stay on at all hours after Plaintiff stated that he was having suicidal urges posed a risk to Plaintiff that society would not tolerate. To the contrary, if jail officials did not take such measures after becoming aware of Plaintiff's suicidal urges, such an omission would likely violate the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (providing a state actor may not be liable under § 1983 for a violation of the Eighth Amendment unless the he (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it).

Moreover, while Plaintiff also alleges that for three periods of time that ranged from three to six days after he told jail officials about his suicidal urges, they placed him in a

cell without a mattress, thereby forcing him to sleep on the floor, and did not allow him to shower, brush his teeth, or wash his hands, these conditions do not rise to the level of a violation of the Eighth Amendment. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing cases holding that denials of a mattress for two weeks and denial of hygiene products for brief periods of time, including specifically six days, do not violate the Eighth Amendment); *Dellis v. Corrs. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001) (providing that temporary inconveniences "did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency").

Thus, Plaintiff's claim for injunctive relief arising out of the conditions of his confinement after jail officials become aware of his suicidal urges fail to state a claim for violation of the Eighth Amendment upon which relief may be granted under § 1983.

### 2. First Amendment

As set forth above, Plaintiff also alleges that jail officials have subjected him to the conditions set forth above after learning of his suicidal urges in a manner that "essentially punishes him" and that doing so has deterred him from reporting his suicidal tendencies. The Court liberally construes these allegations to assert a claim for retaliation. A successful retaliation claim requires a plaintiff to establish that (1) he "engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the

plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

First, the Court can plausibly infer from the complaint that Plaintiff's act of telling jail officials about his suicidal tendencies for the purpose of obtaining treatment for those urges is protected conduct. *Odum v. Hiland*, No. 5:12CV–P124–R, 2013 WL 2297071, at *6 (W.D. Ky May 24, 2013) (finding that seeking medical care is protected conduct for purposes of a retaliation claim) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Further Plaintiff's complaint suggests that TDOC has a custom or policy under which jail officials implement harsher conditions of confinement for prisoners whom jail officials are aware are suicidal. Moreover, while the Court is cognizant that the constitution requires jail officials to "take reasonable measures to guarantee the safety of the inmates," *Farmer*, 511 U.S. at 832, it is not apparent from the face of Plaintiff's complaint that all of the measures that Plaintiff alleges jail officials have taken upon learning of his suicidal tendencies would fall into this category. Additionally, the complaint allows the Court to plausibly infer that the conditions of confinement to which jail officials have subjected Plaintiff upon becoming aware of his suicidal urges that are not clearly precautionary may deter a reasonable prisoner from reporting such urges.

In other words, while the Court recognizes that the constitution requires jail officials to take "reasonable measures" to protect suicidal prisoners upon learning of their suicidal urges, it is not apparent from the face of the complaint that all of the actions Plaintiff alleges that jail officials have taken to address his suicidal urges are reasonably calculated to address those urges. Moreover, as it appears that some of the measures jail officials have implemented upon learning of Plaintiff's suicidal tendencies that are not clearly precautionary, including restrictions on hygiene and/or placement in a cold cell, may deter a reasonable inmate from reporting similar urges.

Accordingly, Plaintiff's claim for injunctive relief based on allegations that jail officials retaliate against prisoners, including Plaintiff, for reporting suicidal urges by implementing conditions of confinement that are unnecessarily harsh will proceed in this action.

## III. MOTION FOR PRELIMINARY INJUNCTION AND RESTRAINING ORDER

Plaintiff has also filed a motion in which he requests that the Court issue a restraining order and/or preliminary injunction requiring jail officials to properly treat his ongoing mental health issues, including his suicidal urges, in a manner that will not exacerbate them and/or deter him from reporting such urges [Doc. 5]. Rule 65(b) of the Federal Rules of Civil Procedure governs issuance of temporary restraining orders and provides that:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by

> affidavit or by the verified complaint, that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition[.]

Plaintiff has the burden to prove he is entitled to a TRO. *Helling v. McKinney*, 509 U.S. 25, 35 (1998).

First, Plaintiff alleges in his sworn complaint that he is having daily suicidal urges and that he has not told jail officials about these urges. Obviously, any suicidal attempt by Plaintiff may result in substantial irreparable injury, loss, or damage. However, as the Court has declined to seal the records in this case, it is apparent that jail officials will be aware of Plaintiff's suicidal ideations upon receiving notice of entry of this memorandum and order in the same manner in which they would be made aware of the temporary restraining order that Plaintiff requests, and the Court will direct the Clerk to send a copy of this order directly to all jail officials that Plaintiff named as Defendants to ensure that the relevant jail officials become aware of Plaintiff's current issues as soon as practicable. Upon receipt of such notice through receipt of this memorandum and order, jail officials will again be required to "take reasonable measures to guarantee" Plaintiff's safety in order to not violate Plaintiff's constitutional rights. *Farmer*, 511 U.S. at 832.

While the Court is aware that, accepting Plaintiff's allegations in his complaint as true, this may mean that jail officials also subject Plaintiff to the same conditions of confinement that Plaintiff alleges are unnecessarily harsh as set forth above, Plaintiff has not established that implementation of any such measures would result in irreparable

injury, loss, or damage. Thus, Plaintiff's request for a temporary restraining order will be **DENIED**.

Also, Plaintiff's request for a preliminary injunction in this motion is premature, as Defendants have not yet been served with Plaintiff's complaint, which seeks the same ultimate relief. Accordingly, Plaintiff's motion for a temporary restraining order and preliminary injunction [Doc. 5] will be **DENIED**.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion to seal the case [Doc. 4] is **DENIED**;

2. The Clerk is **DIRECTED** to substitute the State of Tennessee as the only Defendant in this case and to mail a copy of this memorandum and order to the Attorney General for the State of Tennessee and all of the jail officials at Bledsoe Correctional Complex that Plaintiff listed as Defendants in his complaint;

3. Only Plaintiff's claim for injunctive relief based on allegations that jail officials retaliate against prisoners, including Plaintiff, for reporting suicidal urges by implementing conditions of confinement that are unnecessarily harsh will proceed in this action;

4. All other claims are **DISMISSED**;

5. Plaintiff's motion for a temporary restraining order or preliminary injunction [Doc. 5] is **DENIED**;

6. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant State of Tennessee;

7. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty (20) days of entry of this order;

8. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

9. Service on Defendant State of Tennessee shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

10. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action may be dismissed;

11. Defendant State of Tennessee shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant State of Tennessee fails to timely respond to the complaint, it may result in entry of judgment by default; and

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendant or its counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE